**THREE S CONSTRUCTORS, INC.**

v.

**The UNITED STATES.**

No. 423–87C.

United States Claims Court.

July 31, 1987.

Robert H. Koehler, Washington, D.C., for plaintiff; Patton, Boggs & Blow, of counsel.

Tamra Phipps, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

MEROW, Judge:

In this pre-award contract claim matter, plaintiff, with respect to a pending Veterans Administration (VA) contract, contests the validity and applicability of a determination by the Small Business Administration (SBA) that it is not a small business.

The relevant administrative record has been filed with the court and a hearing has been held where the contracting officer's testimony was presented, documents were admitted in evidence, facts stipulated, and argument presented.

Based upon the evidence of record, the following facts are found.

On December 5, 1986 the VA Medical Center in Marlin, Texas (Medical Center) issued solicitation No. IF13–611–1–87 (VA solicitation) for sealed bids to furnish and install fire tube boilers.

The boilers currently in use at the Medical Center provide steam for cooking, hot water, sterilization and heating. They are 30 years old and in a deteriorated condition. Asbestos is present which must be removed. The work required under the proposed contract will serve to remedy these conditions. The Medical Center is a 202 bed facility having, at present, some 180 residents who are predominantly elderly and require long-term care.

The VA solicitation for the boilers was amended six times and bid opening occurred on April 23, 1987. There were five bidders, with plaintiff, Three S Constructors, Inc., as the low bidder and Gibson Hart Company (Gibson Hart) the second low bidder.[1]

The VA solicitation was set aside for small businesses under the Standard Industrial Classification (SIC) Code 1711 (plumbing, heating (except electric), and air conditioning). To be considered a "small business concern" under SIC Code 1711, a company's annual receipts for the past three years cannot exceed $7 million.

On April 29, 1987 a representative of Gibson Hart telephoned the Medical Center's contracting officer and verbally protested that Three S was not a small business concern under the SIC Code 1711 size standard.

By letter dated April 30, 1987 to the contracting officer, Gibson Hart confirmed its size protest. The Gibson Hart letter was mailed in Kansas City, Missouri on April 30, 1987 and was received by the Medical Center on May 4, 1987.

By letter dated May 6, 1987 the VA contracting officer transmitted the Gibson Hart size protest to the SBA Regional Office in Dallas, Texas. It was, in turn, forwarded to the SBA Regional Office in Kansas City (Regional Office) for disposition. The Regional Office received the protest on May 14, 1987 and provided written notification to Gibson Hart, the contracting officer and Three S of its receipt. By letter dated May 20, 1987 Three S transmitted information requested by the Regional Office for consideration in determining the Three S size status.

The information received by the Regional Office established that Three S was incorporated on September 30, 1986 as a Missouri corporation having its principal place of business in Kansas City, Missouri. The stock of Three S was held by three brothers and their mother as follows:

| Name | Office | Percent of Voting Stock |
|------|--------|-------------------------|
| Chris A. Sanders) | President/Director | 16 |
| Danny L. Sanders) (Brothers) | Vice President/Director | 16 |
| T. Bruce Sanders) | Sec. Treas./Director | 16 |
| Phyllis M. Sanders (Mother) | None | 52 |

The father of the three brothers owning Three S, and the husband of their mother, is Richard A. Sanders. Richard A. Sanders and his brother, William D. Sanders, each own 50 percent of Sanders Industries, Ltd., a holding company and a large business which owns 100 percent of the Sanders Company and 50 percent of Sanders Midwest. A management agreement, signed January 2, 1987 between Sanders Co., Sanders Ltd. and Three S, indicates that Sanders Co. and Sanders Ltd. intend to cease operations and liquidate their businesses. The agreement provides that Three S will provide management services as may be necessary to fulfill the obligations of Sanders Co. and Sanders Ltd. on existing projects and provides that Three S will make use of the Sanders Co. facilities in Kansas City as a temporary office.

1. Plaintiff bid $1,886,605; Gibson Hart bid $2,288,000. Plaintiff has submitted a mistake-in-bid claim to the VA seeking to revise its bid upward by $362,909. No resolution of this mistake claim has, as yet, occurred. Were the upward revision to be allowed, plaintiff would remain the low bidder by $38,486.

The information provided to the Regional Office showed the situation to be one where the father and uncle operated large firms, but intended to go out of business and the sons, who had been employees, officers and directors of Sanders Co. until January 1987, then formed their own company. The information also established that necessary bonding capacity of $8 million for Three S is indemnified by the father, Richard S. Sanders. This is because Three S was informed by the bonding company that such capacity would not be made available absent this personal indemnification. Three S had its own line of credit and capital.

On May 29, 1987 the Regional Office issued its size determination on the protest relating to whether there was an affiliation with a large firm such as to deny Three S small business status. The Regional Office determined that Three S "is a small business when properly bidding on Government procurements with a size standard of $7,000,000." The determination analyzed the relationship between Three S and the large firms intended to be liquidated as follows (in part):

It does not appear that SSS was formed in an attempt to circumvent the small business set aside policy. The "identity of interest," common officers, and bonding indemnification will have no bearing after liquidation of Sanders Ltd. and its holdings. The management agreement is of short duration and is not of a continuing nature, therefore a clear "line of fracture" has been established. It is not reasonable to conclude that Sanders Ltd. and its related companies have the power to direct, influence, or control SSS, therefore there is no affiliation.

Gibson Hart received its copy of the determination of the Regional Office on June 1, 1987. By letter dated June 5, 1987, and mailed by certified mail on that date, Gibson Hart appealed the Regional Office's size determination to the SBA's Office of Hearing and Appeals (OH & A). The notice of appeal letter concluded as follows:

We would appreciate your review of the many inter-related factors involving this determination and conclude that on the bid date of April 23, 1987 Three S Constructors, Inc. should be considered a nonresponsive bidder based on the Small Business Administration requirements for IFB 611-1-87.

We further certify that copies of this notice of appeal have been sent to the Contracting Officer, The Small Business Administration, Kansas City Regional Office and Three S Constructors, Inc.

The applicable SBA regulation on "Initiation of Appeal" provides (in relevant part) that "[i]n accordance with paragraph (n) of this section, the Notice of Appeal shall be certified and a copy shall be concurrently served by the appellant upon those parties and persons specified in subparagraph (6) of this paragraph." 13 C.F.R. 121.11(f). The certification portion of "paragraph n" reads as follows:

(3) All pleadings, motions and other documents filed pursuant to this section shall be signed by an authorized person, who shall certify as follows:

I have read this document and, under penalty of perjury and the sanctions imposed under 18 U.S.C. 1001, of which I am aware, I certify that, to the best of my knowledge, the statements made therein are true and correct, and that this document is not being filed for the purpose or delay or harassment.

13 C.F.R. § 121.11(n)(3).

The June 5, 1987 notice of appeal letter did not contain the certification set forth above, but did note service of copies on the relevant parties.

On June 10, 1987 OH & A sent a Notice to all parties that they had until June 25, 1987 to submit additional documentary evidence and/or written argument. The Notice also stated (in part):

No *ex parte* contacts between the judges and the participants will be permitted. The judges will not contact or discuss any substantive matter with any participant or other interested person, except in the presence of all participants.

By a letter dated June 23, 1987 and sent by Federal Express "Overnight Letter,"

Three S provided OH & A with a certified response to the appeal. In addition to discussion of the question of affiliation the response also addressed the fact that the notice of appeal filed by Gibson Hart lacked a certification as follows (in part):

### V. Uncertified Form of Protest

The document filed by the Gibson Hart Company as its Notice of Appeal is not certified as is required by Part 121.-11(n)(3) of the SBA Rules and Regulations. Accordingly, the form of the purported Notice of Appeal would seem to require its dismissal for non-compliance with the applicable SBA Rules and Regulations.

On June 24, 1987 at the direction of the OH & A presiding judge, a paralegal of that office contacted Gibson Hart and requested that the necessary certification be made and sent. Gibson Hart prepared a letter and transmitted it by Federal Express to OH & A on June 24, 1987. The letter, received by OH & A on June 25, 1987, states as follows:

Gentlemen:

Per our telephone conversation of June 24, 1987 we offer the following statement:

"In accordance with Small Business regulations, I have read this document and under the penalty of perjury and the sanctions imposed under 18 U.S.C. 1001 of which I am aware, I certify that to the best of my knowledge the statements made therein are true and correct, and that this document is not being filed for the purpose of delay or harassment." We trust you will find the above in order and satisfactory. Please contact us if you have any questions or comments.

Sincerely,

GIBSON HART COMPANY

John G. Hart /s/
John G. Hart

cc: Small Business Administration
Kansas City Regional Office

cc: Three S Constructors, Inc.

On June 26, 1987 OH & A issued its decision on the appeal concerning the size status of Three S. After discussing the facts concerning the ownership of Three S and the relationship with Sanders Co., the decision reads as follows (in part):

Based on these facts, the Regional Office found, in a determination dated May 29, 1987, that Three S was not formed to circumvent the small business set-aside regulations; that a clear "line of fracture" between Sanders Company and Three S has been established; and that therefore Sanders Company does not have power to control Three S under the newly-organized concern rule set forth at 13 CFR 121.3(a)(vi)(C).

On June 10, 1987, Appellant filed a timely appeal alleging generally that the Regional Office erred in failing to find affiliation between Three S and Sanders Company in view of the inter-related activities between the two firms.

On June 23, 1987, Three S filed a reply to the appeal arguing that the appeal fails to specify error in the Regional Office's determination, that it is uncertified, and that it relies upon unsupported conclusions.[2]

### Discussion

The "newly organized concern" rule, codified in 13 CFR 121.3(a)(vi)(C), provides:

A concern may be found as controlling or having the power to control another concern when one or more of the following circumstances are found to exist, and it is reasonable to conclude that under the circumstances, such concern is directing or influencing or has the power to direct or influence the operation of such other concern.

(C) Newly organized concern. Former officers, directors, principal stockholders, and/or key employees of one concern organize a new concern in the same or related industry or field of operation, and serve as its officers, directors, principal stockholders, and/or key employees, and one concern is furnishing or will furnish the other concern with subcontractors, financial or technical assistance, and/or other facilities, whether for a fee or otherwise.

Because every element set forth in the "newly-organized-concerns" rule is

present in the relationship between Three S and Sanders Company, we conclude that the two firms are affiliated.

The record demonstrates that the three brothers (Chris, Danny, and T. Bruce) are acknowledged former key employees of Sanders Company as well as founders of Three S. These three individuals also serve as Three S's officers, directors, and principal stockholders (along with their mother). While there has been no subcontracting between Three S and Sanders Company, there has been financial assistance provided through Richard A. Sanders' action as personal indemnifier on a performance bond for Three S.[3] Finally, Three S has the use of Sanders Company's office facilities and has undertaken to finish all of the latter's construction projects pending liquidation.[4]

In view of the above analysis, we conclude that Three S, Sanders Ltd., and Sanders Company are affiliated, requiring aggregation of the receipts of both firms in order to determine the annual receipts of Three S. It is uncontested that Sanders Company (and its holding company, Sanders, Ltd.) are large firms whose receipts exceed the size standard prescribed in this solicitation. Accordingly, Three S's receipts also exceed the applicable $7 million size standard.

### Conclusion

We conclude that Three S Constructors, Inc. is other than a small business for procurements having a size standard of $7 million or less. The Regional Office's determination is REVERSED, and the appeal is GRANTED.

This constitutes the final decision of the Small Business Administration. *See* 13 CFR 121.11(t), (u), and (v).

---

[2] Although Appellant certified that copies of its appeal were served on all parties, it did not submit the required certification set forth at 13 CFR 121.11(n)(3). At the direction of the Presiding Judge, a paralegal of this Office contacted Appellant and requested that the necessary certification be made and sent. On June 25, 1987, this Office received the proper certification. Accordingly, Appellant fulfilled all the regulatory requirements for filing a timely Notice of Appeal.

[3] As shown before, Richard A. Sanders is the three brothers' father and 50 percent owner of Sanders Ltd., the holding company which owns Sanders Company.

[4] The fact that Sanders Company and Sanders Ltd. will be liquidated by July 1987 is immaterial to our findings. As shown, these two firms were in existence at the time of Three S's self certification.

### Discussion

Plaintiff contests the validity of the OH & A size decision dated June 26, 1987. This SBA size decision was rendered after plaintiff submitted its bid on VA solicitation No. 611–1–87. Thus, pre-award implied-in-fact contract claim jurisdiction under 28 U.S.C. § 1491(a)(1) exists in the Claims Court to review the SBA matter as it relates to the contractual requirement for fair and honest governmental consideration of plaintiff's solicited bid. *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1367 (Fed.Cir.1983); *Electro-Methods, Inc. v. United States*, 728 F.2d 1471 (Fed.Cir.1984); *ATL, Inc. v. United States*, 735 F.2d 1343 (Fed.Cir.1984); *ATL, Inc. v. United States*, 736 F.2d 677 (Fed.Cir.1984); *Cavalier Clothes, Inc. v. United States*, 810 F.2d 1108 (Fed.Cir.1987).

The scope of judicial review of the SBA's final determination is limited. *Allen M. Campbell Co. General Contractors v. Lloyd Wood Construction Co.*, 446 F.2d 261 (5th Cir.1971). Traditionally, the review standard applied to such an agency decision is whether it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). A court is not free to invalidate the agency decision because a different result could be reached on the record. *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1182 (D.C.Cir.1973). Deference must be afforded to the Congressional policy embodied in the Small Business Act which places the responsibility for size decisions in the SBA and makes the decision conclusive on government procurement offices. 15 U.S.C. § 637(b)(6); *Kinnett Dairies, Inc. v. J.C. Farrow*, 580 F.2d 1260, 1273 (5th Cir.1978); *Allen M. Campbell Co. General Contractors v. Lloyd Wood*

*Construction Co., supra.* An agency's construction of its administrative regulation is particularly to be afforded deference. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

■ Clearly, as is indicated by the Regional Office decision affording plaintiff small business status and the OH & A reversal on the same facts, the size determination requires informed construction of the SBA regulations concerning affiliates. Plaintiff argues that 13 C.F.R. § 121.3(a) requires that "consideration shall be given to all appropriate factors, including common ownership, common management, and contractual relationships: * * * *" but that the OH & A, instead, concentrated only upon the "newly organized concern" portion set forth in 13 C.F.R. § 121.3(a)(vi)(C) under "Control through common management." However, given the language of the subsection on "Control through common management" (13 C.F.R. § 121.3(a)(vi)) that "[a] concern may be found as controlling or having the power to control another concern when one or more of the following circumstances are found to exist, and it is reasonable to conclude that under the circumstances, such concern is directing or influencing or has the power to direct or influence the operation of such other concern," concentration by the OH & A on the following circumstance of "(c) Newly organized concern," is not unreasonable. Three S was a newly organized concern. The three sons involved had been key officers of the dissolving, but still existing, large concern. Assistance was being provided between the concerns involved in that Three S was occupying facilities and performing remaining contracts of the large concerns. The undisputed facts in the record before the OH & A support its conclusion that "every element set forth in the 'newly-organized-concern' rule is present in the relationship between Three S and Sanders Company, * * * *."

Thus, giving due deference to the administrative determination, it cannot be concluded that the OH & A applied the applicable regulation arbitrarily or capriciously in this matter and the SBA decision must stand. *See P & B Services v. Cardenas,* 525 F.Supp. 1289 (D.D.C.1981). This does not, however, conclude the litigation as plaintiff also asserts that the OH & A size decision should not apply to the pending VA solicitation No. 611–1–87.

The SBA regulations, 13 C.F.R. § 121.-11(e)(2), provide (in part):

(2) An appeal from a size determination concerning a bidder or offeror in a pending procurement or a pending Government property sale shall be filed in writing no later than five (5) days, exclusive of Saturdays, Sundays, and legal holidays, after receipt of the determination made by a Regional Administrator, or his or her delegatee. Unless written notice of such an appeal is filed within the prescribed time limit, the appellant will be deemed to have waived all rights of appeal insofar as the pending procurement or sale is concerned, but the appeal may proceed to final determination and shall apply to future procurements and sales.

Plaintiff argues that the Gibson Hart notice of appeal letter dated June 5, 1987 should be treated as a nullity because it lacked the certification expressly required by 13 C.F.R. § 121.11(f), (n). As discussed, *supra,* certification was not obtained from Gibson Hart by the OH & A until June 25, 1987. Plaintiff also objects to the procedure by which the OH & A obtained this certification, asserting that it constituted a prohibited *ex parte* contact.

■ As to plaintiff's assertion of prohibited *ex parte* conduct, it is concluded that this does not raise an issue of sufficient moment to deprive the OH & A decision of validity. The certification set forth in the SBA regulation is similar to that resulting from the signature required on a court document under FRCP 11 or RUSCC 11. FRCP 11 and RUSCC 11 provide that "[i]f a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant." The rules do not indicate the method by which a signature omission is to be "called" to the attention of the pleader. While it

would be better practice to call attention to an omission in a manner which notifies all parties, it is not considered that *ex parte* action by an officer of the tribunal concerned to request an omitted signature or certification should serve to vitiate the pleading or ensuing decision on the merits. No authority supporting this drastic result has been cited or located.

■ Plaintiff asserts that, in any event, the Gibson Hart notice of appeal should be considered as filed only when the required certification was added on June 25, 1987.[2] If treated as not filed until "complete" on June 25, 1987, the notice of appeal would not come within the five-day rule for a pending procurement. It is asserted that, under 13 C.F.R. § 121.11(e)(2), the OH & A size decision then could apply only to future procurements, and the contrary Regional Office decision would control with respect to the current VA solicitation.

By analogy to the claim certification required by the Contract Disputes Act, 41 U.S.C. § 605(c)(1), it can be argued that, absent the certification required by 13 C.F.R. § 121.11(f), (n), a notice of appeal on a size determination should be considered a nullity. *W.H. Moseley Co. v. United States,* 677 F.2d 850 (Ct.Cl.1982); *W.M. Schlosser Co. v. United States,* 705 F.2d 1336, 1338 (Fed.Cir.1983). This jurisdictional approach under the Contract Disputes Act stems from the fact that certification of claims of more than $50,000 is a fundamental part of that statutory scheme. *Essex Electro Engineers, Inc. v. United States,* 702 F.2d 998, 1004 (Fed.Cir.1983); *but see Clark Mechanical Contractors v. United States,* 12 Cl.Ct. 415 (1987). This is not the case with the certification required by SBA regulation. Rather, as noted above, the SBA regulation is, in its application, akin to FRCP 11 or RUSCC 11. The Gibson Hart certification of June 25, 1987 was treated by the OH & A as in the nature of an amendment to the previous notice of appeal. A recognized purpose for an amendment to a pleading is to cure a flaw in the original statement. *Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 391 (5th Cir.1985). Given an original filing which provides adequate notice, where an amendment concerns the same transaction set forth in the original pleading, it properly relates back to the date of the original pleading. FRCP, RUSCC 15 (c); *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984); *Snoqualmie Tribe of Indians v. United States,* 178 Ct.Cl. 570, 588, 372 F.2d 951, 961 (1967); *Boyce v. Anderson,* 405 F.2d 605, 607 (9th Cir.1968); *John G. Vann v. United States,* 190 Ct.Cl. 546, 420 F.2d 968 (1970).

Accordingly, it is concluded that OH & A's action in relating the certification submission by Gibson Hart back to the original notice of appeal was within its permissible discretion and may not be upset upon review. Thus, the appeal was timely and covered the pending VA procurement. It is noted that FAR 19.302(i) also provides (in part):

The SBA will inform the contracting officer of its ruling on the appeal. The SBA decision, if received before award, will apply to the pending acquisition. SBA rulings received after award shall not apply to that acquisition.

As an award did not occur prior to the final SBA decision, the contracting officer is now bound to accept it as conclusive. 15 U.S.C. § 637(b)(6); *Southwest Marine, Inc. v. United States,* 4 Cl.Ct. 275, 280 (1984); *Allen M. Campbell Co. v. United States,* 199 Ct.Cl. 515, 520, 467 F.2d 931, 933 (1972).

*Conclusion*

As the final SBA decision on plaintiff's size status remains valid and as the decision is applicable to the pending VA procurement, plaintiff is not entitled to the equitable relief sought in the complaint filed July 14, 1987. It is ORDERED that final judgment be entered denying the eq-

---

**2.** Plaintiff also asserts that, literally, the Gibson Hart letter dated June 24, 1987, quoted, *supra,* only certifies itself. However, the OH & A decision in its n. 2 also quoted, *supra,* explains the obvious intent to apply the certification to the previous submission.

uitable relief sought and dismissing the complaint, with no costs to be assessed.