# United States Court of Appeals for the Federal Circuit

---

**PALLADIAN PARTNERS, INC.,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellant*

---

2014-5125

---

Appeal from the United States Court of Federal Claims in No. 14-cv-00317C, Judge Marian Blank Horn.

---

Decided: April 22, 2015

---

DANIEL E. CHUDD, Jenner & Block LLP, Washington, DC, argued for plaintiff-appellee. Also represented by DAMIEN C. SPECHT, CHARLES L. CAPITO, III.

DOMENIQUE GRACE KIRCHNER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by STUART F. DELERY, ROBERT E. KIRSCHMAN, JR., DEBORAH A. BYNUM.

---

Before LOURIE, MOORE, and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

This case involves a pre-award bid protest. On February 28, 2014, the National Institute on Drug Abuse ("NIDA"), an institute within the National Institutes of Health ("NIH"), issued Request for Proposal ("RFP") No. N01DA-14-4423 for the "NIH Pain Consortium Centers of Excellence in Pain Education Coordination Center" ("the solicitation"). NIDA initially issued the solicitation as a small business set-aside under North American Industry Classification System ("NAICS") code 541712, "Research and Development in the Physical, Engineering, and Life Sciences (except Biotechnology)," which limits offerors to small businesses with 500 employees or fewer. A prospective offeror appealed the NAICS code designation to the United States Small Business Administration ("SBA") Office of Hearings and Appeals ("OHA"), and OHA ordered NIDA's contracting officer to amend the solicitation to change the NAICS code designation to 541611, "Administrative Management and General Management Consulting Services."

Palladian Partners, Inc. ("Palladian") filed suit in the Court of Federal Claims seeking declaratory and injunctive relief to enjoin NIDA from accepting and evaluating proposals under the new code, which rendered Palladian ineligible to compete. The Court of Federal Claims granted Palladian's motion for judgment on the administrative record, finding that the contracting officer's NAICS code amendment was arbitrary and capricious. Specifically, the court found that NAICS code 541611 did not best describe the statement of work for the solicitation. Based on this conclusion, the court remanded for NIDA to make a "proper NAICS code selection, given the current statement of work, or to determine how otherwise to proceed." *Palladian Partners, Inc. v. United States*, 119 Fed. Cl. 417, 459 (2014).

The United States appeals from the Court of Federal Claims' final judgment which sustained Palladian's pre-award protest and entered a permanent injunction against the receipt and review of proposals for the solicitation under NAICS code 541611. Among other things, the government argues that the court should have dismissed Palladian's suit for failure to exhaust administrative remedies with OHA. Because we agree that Palladian failed to exhaust its administrative remedies, and because this failure warrants dismissal of Palladian's protest, we reverse.

BACKGROUND

The Small Business Act, 15 U.S.C. §§ 631, *et seq*., ("the Act") was designed to set aside certain contracts for the benefit of small business concerns. Congress created the Small Business Administration ("SBA") to carry out the policies of the Act, and gave SBA authority to "specify detailed definitions or standards by which a business concern may be determined to be a small business concern." 15 U.S.C. § 632(a)(2)(A); *see also* 15 U.S.C. § 637(b)(6) (SBA is empowered "to determine within any industry the concerns, firms, persons, corporations, partnerships, cooperatives, or other business enterprises which are to be designated 'small-business concerns' for the purpose of effectuating the provisions of this chapter"). SBA was authorized to engage in rulemaking and its regulations "have the force and effect of law." *Otis Steel Prods. Corp. v. United States*, 316 F.2d 937, 940 (Ct. Cl. 1963) ("Since the Administrator was specifically authorized to define a small business concern, these regulations have the force and effect of law.").

SBA uses the North American Industry Classification System ("NAICS") to determine which entities qualify as small business concerns. The Office of Management and Budget assigns NAICS codes to various industry sectors, and SBA determines which firms qualify as small busi-

nesses "to assure that a fair proportion of government contracts for goods and services are performed by such entities in each industry category." *Advanced Sys. Tech., Inc. v. United States*, 69 Fed. Cl. 474, 476 (2006) (citing 15 U.S.C. §§ 637(b)(6), 644(a)). To do so, SBA specifies the maximum number of employees or maximum annual receipts which a company may have in order to qualify as a small business within a particular NAICS code. *See* 13 C.F.R. § 121.201 (providing size standards for specific industries by either annual revenue or number of employees).

SBA's regulations instruct that the procuring agency's contracting officer "designates the proper NAICS code and corresponding size standard in a solicitation, selecting the single NAICS code which best describes the principal purpose of the product or service being acquired." 13 C.F.R. § 121.402(b). The NAICS code assigned to a solicitation limits the small businesses that may submit bids to those that qualify under the size standard associated with that particular NAICS code. By regulation, the contracting officer's choice of NAICS code and corresponding size standard "is final unless timely appealed" to the SBA's OHA. 13 C.F.R. § 121.402(d).

The regulations provide that the "OHA appeal is an administrative remedy that must be exhausted before judicial review of a NAICS code designation may be sought in a court." 13 C.F.R. § 121.1102. OHA's decision in a NAICS code appeal is "final" and "may not be reconsidered." 13 C.F.R. § 134.316(d) & (f). If OHA grants the appeal and changes the NAICS code, "and the contracting officer receives OHA's decision by the date offers are due, the contracting officer must amend the solicitation to reflect the new NAICS code." 13 C.F.R. § 134.318(b). With this framework in mind, we turn to the solicitation at issue.

### A. The Solicitation

The National Institutes of Health ("NIH") operates twelve Centers of Excellence in Pain Education ("CoEPEs") to "develop pain management training and educational resources for medical, dental, nursing, and pharmacy students to advance the assessment, diagnosis, and safe treatment of pain." *Palladian*, 119 Fed. Cl. at 420-21. On February 28, 2014, NIDA published the solicitation at issue as a total small business set aside. The purpose of the solicitation was to fund a "Coordination Center," operated by the contractor, "to facilitate the activities of the CoEPEs." *Id*. at 421.

The solicitation identified seven tasks the contractor was required to perform. Specifically, it provided that the contractor would: (1) prepare and submit monthly progress reports; (2) "maintain, host and manage an interactive online communication portal" for NIH, the contractor, and the CoEPEs to use; (3) "coordinate the process by which CoEPEs submit their materials to be used in the development of cases," "facilitate NIH Pain Consortium evaluation of proposed cases and other materials to be produced," "use the materials submitted by the CoEPEs to create" interactive pain treatment scenarios with graphics and embedded videos, "proofread, edit, and program" the scenarios, "advise and suggest ways to improve the cases, when applicable," and "program, format and code" portions of the NIH website; (4) "facilitate the evaluation of the impact of these training materials" and the "dissemination of the results of these evaluations;" (5) "organize teleconferences," "summarize these meetings in writing," and post such summaries on the website; (6) post videos through a special YouTube channel; and (7) obtain additional content for case studies. *Id*. at 422-23.

NIDA's contracting officer, Kenneth E. Goodling, selected NAICS code 541712, "Research and Development in the Physical, Engineering, and Life Sciences (except

Biotechnology),” for the solicitation. To qualify under this code, a business must have fewer than 500 employees. Palladian alleges that it qualified as a small business under this code and size standard.

## B. Initial OHA Appeal

SBA's regulations provide that “[a]ny interested party adversely affected by a NAICS code designation may appeal the designation to OHA.” 13 C.F.R. § 121.1103(a)(1). “An appeal from a contracting officer's NAICS code or size standard designation must be served and filed within 10 calendar days after the issuance of the solicitation or amendment affecting the NAICS code or size standard.” 13 C.F.R. § 121.1103(b)(1).

On March 10, 2014, a prospective offeror—Information Ventures, Inc.—filed a timely OHA Appeal. Upon receipt of the appeal, OHA issued a notice and order instructing the contracting officer to amend the solicitation to notify potentially interested parties of the appeal. The order indicated that any response to the appeal must be filed with OHA and received no later than March 25, 2014. Pursuant to that order, and consistent with SBA regulations, NIH amended the solicitation to notify all potential offerors—including Palladian—of the OHA appeal. Palladian did not respond to or seek to participate in the appeal.

In its appeal, Information Ventures argued that the contracting officer erred in selecting NAICS code 541712, because the tasks identified in the solicitation were unrelated to research and development. According to Information Ventures, “with the exception of Task 3—which contains some work properly viewed as information technology, such as developing a website—all of the tasks fit squarely within NAICS code 541611,” “Administrative Management and General Management Consulting Services.” *NAICS Appeal of: Info. Ventures, Inc.*, SBA No.

NAICS-5544, 2014 WL 1395651, at *3 (Apr. 2, 2014) (*IV OHA Appeal*).

On March 20, 2014, NIH contracting officer Goodling filed a response, defending his selection of NAICS code 541712. Specifically, he argued that:

> The primary purpose of the solicited contract and the majority of the anticipated cost of the contract will be in the implementation of Task 3 of the Statement of Work. The Contractor will use materials researched and submitted by the CoEPEs to develop the online case-scenarios. Further, the Contractor will perform additional research, program, format and code as needed to develop the website on the NIH Pain Consortium page for research support in disseminating health based information.

*Palladian*, 119 Fed. Cl. at 427. Goodling explained that the contractor would be responsible for the "R&D [Research & Development] creation of the two predominant products in the contract:" the case-based scenarios and the website to host them. *Id.*

On April 2, 2014, OHA granted the appeal, concluding that the contracting officer "clearly erred in assigning NAICS code 541712" because the solicitation "does not call for research and development." *IV OHA Appeal*, 2014 WL 1395651, at *5. OHA found that the contractor would have "little, if any, substantive role in any research" and would instead be coordinating among entities that were engaging in research. *Id.* OHA agreed with Information Ventures that NAICS code 541611 was the most appropriate for the solicitation. In reaching this conclusion, OHA noted that it has affirmed use of NAICS code 541611 "in situations where a contractor will 'assis[t] with the administration and management' of an important program." *Id.* at *7 (citations omitted). OHA found that the "instant contractor will perform precisely such work,

acting as the 'Coordination Center,' assisting with administrative matters, and managing communications and interactions between NIH and the CoEPEs." *Id.*

Because OHA's decision issued before the close of the solicitation, it informed the contracting officer that he "MUST amend the RFP to change the NAICS code designation from 541712 to 541611." *Id.* OHA concluded by stating that "[t]his is the final decision of the Small Business Administration." *Id.* Pursuant to OHA's decision, the contracting officer amended the solicitation to change the NAICS code to 541611, "Administrative Management and General Management Consulting Services," which has a size standard of $14 million average annual receipts. NIDA issued another amendment to the solicitation, this time extending the due date for offers to April 22, 2014.

### C.  Palladian's Subsequent OHA Appeal

On April 14, 2014, Palladian appealed the contracting officer's new NAICS code designation to OHA. OHA provided notice of the appeal and the contracting officer issued an amendment to the solicitation to notify all potential offerors of Palladian's appeal. Palladian argued that NAICS code 541611 was inappropriate because it is used for "general consulting services in support of an agency." *NAICS Appeal of Palladian Partners, Inc.*, SBA No. NAICS-5553, 2014 WL 1924608, at *4 (May 7, 2014) ("*Palladian OHA Dismissal*"). According to Palladian, NAICS code 519130, "Internet Publishing and Broadcasting and Web Search Portals," which has a size standard of 500 employees, best describes the work to be performed because the RFP's tasks "all relate to the creation of the Coordination Center website or to basic contract administration." *Id.* Palladian asserted that it would be eligible to bid if that code and its accompanying size standard were used, but not if the revenue-based NAICS code 541611 applied, which restricted the solicitation to com-

panies with less than $14 million in average annual receipts. Notably, Palladian did not defend or seek reinstatement of the original code chosen by the contracting officer—NAICS code 541712.

On May 7, 2014, OHA dismissed Palladian's appeal under the doctrine of issue preclusion. Specifically, OHA found that Palladian is "barred from relitigating issues already decided in NAICS Appeal of Information Ventures," and that the issue presented there was the same: which NAICS code is appropriate for RFP No. N01DA-14-4423. *Id.* at *6. OHA emphasized that, in *Information Ventures*, the contracting officer notified Palladian and other prospective offerors that a NAICS appeal was pending at OHA, that the record would close on March 25, 2014, and that SBA's regulations permit interested parties to intervene "at any time until the close of record." *Id.* at *6 (quoting 13 C.F.R. § 134.210(b)).

OHA explained that, if Palladian "wished to litigate the issue of what NAICS code should apply to this RFP," it "could, and should, have intervened in *Information Ventures*." *Id.* OHA rejected Palladian's suggestion that its decision in *Information Ventures* should have addressed every possible NAICS code, noting that it would not be "practicable to specifically comment in the text of a decision on every NAICS code theoretically applicable to a procurement." *Id.* Finally, OHA explained that the regulations "specifically preclude reconsideration of a NAICS code decision." *Id.* (citing 13 C.F.R. § 134.316(f)).

### D. Court of Federal Claims Proceedings

On April 21, 2014, while its OHA appeal was pending, Palladian filed a pre-award bid protest in the Court of Federal Claims. Palladian argued that the contracting officer's decision to amend the solicitation was "arbitrary, capricious, an abuse of discretion, and lack[ed] a rational basis." *Palladian*, 119 Fed. Cl. at 420. In its complaint, Palladian sought declaratory and injunctive relief, includ-

ing a finding that NIDA's use of NAICS code 541611 was improper, an injunction preventing NIDA from accepting and evaluating proposals under the that code, and a declaration that the appropriate NAICS code is 519130, "Internet Publishing and Broadcasting and Web Search Portals." *Id.* at 431.

The parties filed expedited motions for judgment on the administrative record. In relevant part, the government argued that Palladian's suit should be dismissed for failure to exhaust its administrative remedies because it did not participate in Information Ventures' OHA NAICS proceeding. The Court of Federal Claims conducted a hearing on the parties' cross-motions and ordered supplemental briefing. During those proceedings, Palladian conceded that it had notice of Information Ventures' OHA appeal.

On May 15, 2014, the court issued an oral decision finding that the NIDA contracting officer's decision to change the solicitation's NAICS code from 541712 to 541611 was arbitrary and capricious. The court also preliminarily enjoined NIDA from proceeding with the solicitation under NAICS code 541611. Accordingly, the contracting officer issued an amendment to the solicitation indicating that no offers would be accepted or considered.

The court subsequently issued the written decision at issue in this appeal, granting Palladian's motion for judgment on the administrative record. At the outset, the court noted that this court "has yet to clarify how [the Court of Federal Claims'] bid protest jurisdiction interacts with the Small Business Administration's NAICS code review responsibilities." *Palladian*, 119 Fed. Cl. at 434. The parties agreed that the issue "hasn't been decided at the Circuit." *Id.* The court found, however, that it had jurisdiction pursuant to the Tucker Act, 28 U.S.C.

§ 1491(b)(1), to review the contracting officer's decision to amend the solicitation.

The government argued that, even if the Court of Federal Claims had the jurisdiction to do so, the court should not reach the merits of Palladian's appeal because Palladian failed to exhaust its administrative remedies at the SBA when it declined to participate in Information Ventures' OHA appeal. According to the government, Palladian had notice of that proceeding and was required to participate in it pursuant to 13 C.F.R. § 121.1102, which states that the "OHA appeal is an administrative remedy that must be exhausted before judicial review of a NAICS code designation may be sought in a court." *Palladian*, 119 Fed. Cl. at 435. The Court of Federal Claims rejected the government's approach, finding that it would require potential small business bidders to participate in an OHA NAICS proceeding to preserve their right to judicial review, even if they had not yet decided to bid, and even if the current NAICS code did not negatively affect their ability to bid.

Turning to the merits, the Court of Federal Claims concluded that the contracting officer "blindly accept[ed] the NAICS code chosen" by OHA and failed to exercise his discretion to determine the proper code for the solicitation. *Id.* at 443. In doing so, the court noted that the code selected must be the one that "best describes the principal nature of the product or service being acquired." *Id.* (citing 13 C.F.R. § 121.402(b)).

After reviewing the record, the court stated that "it appears that Task 3, encompassing the construction of a website portal, and the creation and posting online of interactive case-based scenarios, will account for the 'greatest percentage of the contract price.'" *Id.* at 445 (citing Federal Acquisition Regulation ("FAR") 19.102(d)). "Therefore, Task 3 should be most determinative of which NAICS code to apply to the solicitation." *Id.* Given this

conclusion, the court found that "NAICS code 541611 does not best describe the 'principal nature' of the services being acquired." *Id.* at 457. The court further indicated that the "creation of a website and the publishing of content online align better with NAICS code 519130's classification of companies 'publishing and/or broadcasting content on the Internet exclusively.'" *Id.* at 452. But because "the role of the court is not to determine which NAICS code best describes the statement of work in the solicitation, or to select a NAICS code for insertion into the solicitation," the court declined Palladian's invitation to declare that the solicitation be re-designated under NAICS code 519130. *Id.* at 459. Instead, the court: (1) found that selection of NAICS code 541611 was arbitrary and capricious; (2) remanded to NIDA to make a proper code selection or otherwise determine how to proceed; and (3) entered a permanent injunction against receipt and review of proposals for the solicitation under NAICS code 541611.[1]

The government timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

---

[1] The Court of Federal Claims reached no conclusion regarding the extent to which the originally-designated code—NAICS code 541712—aligned with the tasks outlined in the solicitation. The parties on appeal concede that NAICS code 541712 is not an appropriate choice for this solicitation, however. There is, thus, no contention that it was arbitrary or capricious for the contracting officer to choose a code other than that originally designated; the only question is whether it was arbitrary or capricious for the contracting officer to change the designation to NAICS code 541611, rather than to some *third* NAICS code, such as NAICS code 519130.

DISCUSSION

We review the Court of Federal Claims' legal determinations de novo and its factual findings for clear error. *CMS Contract Mgmt. Servs. v. Mass. Hous. Fin. Agency*, 745 F.3d 1379, 1385 (Fed. Cir. 2014). In a bid protest case, an agency's action "must be set aside if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Savantage Fin. Servs. v. United States*, 595 F.3d 1282, 1285 (Fed. Cir. 2010). The court's task is to determine whether "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Id.* at 1285-86 (citation omitted).

As a threshold matter, the government states that we have not yet decided whether the Court of Federal Claims has the authority to reverse or vacate an OHA NAICS code decision. For the reasons explained below, we conclude that the court had jurisdiction over both OHA's code decision and the contracting officer's amendment to the solicitation implementing that decision.

Next, the government argues that the Court of Federal Claims erred when it enjoined the agency from proceeding with the solicitation under the NAICS code OHA determined should be assigned to it in *Information Ventures*. Specifically, the government argues that the court: (1) erred by not dismissing Palladian's protest for failure to exhaust administrative remedies; (2) improperly concluded that the contracting officer abused his discretion by amending the solicitation in light of OHA's NAICS code determination; and (3) improperly engaged in a de novo review of OHA's NAICS code determination. We agree with the government on its first point, and find that Palladian failed to exhaust its administrative remedies. Because this failure requires dismissal of Palladian's protest, we need not reach the government's additional arguments on appeal.

## A. Jurisdiction

"We review decisions of the Court of Federal Claims on the scope of its jurisdiction without deference." *SRA Int'l, Inc. v. United States*, 766 F.3d 1409, 1412 (Fed. Cir. 2014). The Tucker Act, as amended by the Administrative Disputes Resolution Act ("ADRA"), confers jurisdiction to the Court of Federal Claims:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1). We have acknowledged that this statute "provides a broad grant of jurisdiction because '[p]rocurement includes *all stages of the process of acquiring property or services*, beginning with the process for determining a need for property or services and ending with contract completion and closeout.'" *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1381 (Fed. Cir. 2012) (quoting *Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1244 (Fed. Cir. 2010)).

In this case, pursuant to OHA's decision in *Information Ventures*, the contracting officer amended the solicitation to change the NAICS code from 541712 to 541611. Palladian argued that both the agency's amendment and OHA's order directing that amendment "are actions 'in connection with a proposed procurement' that lacked a rational basis and were contrary to applicable regulatory requirements." *Palladian*, 119 Fed. Cl. at 433 (citation omitted).

The Court of Federal Claims found that it had jurisdiction to review whether the contracting officer's decision to amend the NAICS code was "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law." *Id.* The court noted that there was some precedent suggesting that it also has jurisdiction to review SBA OHA's final decision, as long as that decision is in connection with a proposed procurement. *Id.* at 435 n.8 (citing *Cavalier Clothes, Inc. v. United States*, 810 F.2d 1108, 1112 (Fed. Cir. 1987) ("[N]othing either in the language or the legislative history of [the Small Business Act at 15 U.S.C.] § 634 suggests that Congress intended to grant the SBA any greater immunity from injunctive relief than that possessed by other governmental agencies."). But because the court found that it had jurisdiction under the Tucker Act to review the contracting officer's decision to amend the solicitation, it declined to address whether it also had jurisdiction to review OHA's decision. *Id.*

On appeal, Palladian argues that, when the contracting officer "blindly adopts" OHA's NAICS code determination, both OHA's decision and the contracting officer's adoption of it are within the Court of Federal Claim's jurisdiction. Appellee Br. 17. Palladian submits that, "although the court was correct in asserting jurisdiction over the Contracting Officer's amendment of the solicitation, and properly enjoined the Agency from accepting proposals under NAICS code 541611, the court also would have been well-within its jurisdiction to directly review OHA's determination." *Id.* The government concedes that Palladian's objections to the NAICS code are within the Court of Federal Claims' jurisdiction.[2] *See Palladian*

---

[2] At oral argument, counsel for the government stated that "we have not taken the position that there is a lack of jurisdiction. And I believe we have said in our briefs that certainly the jurisdictional statute is broad enough here. Jurisdiction is determined by whether you are challenging the term of a solicitation. They are challenging the term of a solicitation." Oral Argument at

*Partners*, 119 Fed. Cl. at 433 (noting that the government conceded that both the contracting officer's designation and the OHA decision are "in connection with" a proposed procurement).

"Every federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (citation omitted). This court has not previously addressed the scope of the Court of Federal Claims' jurisdiction over OHA's NAICS code determinations. We have, however, recognized that the Tucker Act "expressly waives sovereign immunity for claims against the United States in bid protests" and that "this waiver covers a broad range of potential disputes arising during the course of the procurement process." *Sys. Application & Techs.*, 691 F.3d at 1380. As noted, the statute authorizes the Court of Federal Claims to review an action "in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). In construing this language, we have found that the "operative phrase 'in connection with' is very sweeping in scope." *RAMCOR Servs. Group, Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999) ("As long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction.").

For its part, the Court of Federal Claims has held that "the SBA OHA's decision is . . . 'in connection with' a proposed procurement." *InGenesis, Inc. v. United States*,

---

1:34-1:55, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/14-5125/all. Likewise, counsel for Palladian indicated that "both parties agreed that the term 'in connection with a procurement' would include both the contracting officer's action and the OHA action." *Id.* at 13:52-14:32.

104 Fed. Cl. 43, 48 (2012); *see also RLB Contracting, Inc. v. United States*, 118 Fed. Cl. 750, 756 (2014) ("Decisions of SBA's OHA are reviewable under [the Tucker Act's] grant of authority . . . ."). We agree. Because OHA's NAICS code determination and the contracting officer's amendment to the solicitation are actions "in connection with a proposed procurement," we conclude that they are within the scope of jurisdiction granted under the Tucker Act. Accordingly, we find that the Court of Federal Claims had jurisdiction over OHA's NAICS code decision and the contracting officer's decision amending the solicitation pursuant to OHA's directive.

## B.   Exhaustion of Administrative Remedies

The government argues that Palladian failed to properly exhaust its administrative remedies before filing its pre-award bid protest with the Court of Federal Claims and that this failure requires dismissal. "The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." *McKart v. United States*, 395 U.S. 185, 193 (1969). It provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 599 (Fed. Cir. 1998) (quoting *McKart*, 395 U.S. at 193). Exhaustion stems from the notion that "'[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred *against objection made at the time appropriate under its practice*.'" *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)).

"Exhaustion of administrative remedies serves two main purposes." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

First, it protects "administrative agency authority." *Id.* On this point, the Supreme Court has explained that the exhaustion doctrine "recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). Exhaustion gives an agency "an opportunity to correct its own mistakes . . . before it is haled into federal court." *Id.*

Second, exhaustion promotes judicial efficiency. *Sandvik*, 164 F.3d at 600. "Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court." *Woodford*, 548 U.S. at 89. Even if litigation ensues, however, exhaustion of the administrative procedure may narrow the issues and "produce a useful record for subsequent judicial consideration." *Id.*

Exhaustion may be required by statute, regulation, or judicially-created common law. *See Weinberger v. Salfi*, 422 U.S. 749, 766 (1975) (distinguishing between a statutory exhaustion requirement and "judicially developed doctrine of exhaustion"); *see also Sims v. Apfel*, 530 U.S. 103, 108 (2000) ("[I]t is common for an agency's regulations to require issue exhaustion in administrative appeals."). The "fact that the administrative remedy was provided by a regulation rather than by a statute does not make the exhaustion doctrine inapplicable or inappropriate." *Sandvik*, 164 F.3d. at 600. Where a regulation requires exhaustion, a party's failure to exhaust administrative remedies precludes judicial review of its claim. *See Sims*, 530 U.S. at 108 (noting that, when a regulation provides for exhaustion, "courts reviewing agency action regularly ensure against the bypassing of that require-

ment by refusing to consider unexhausted issues"); *see also Sandvik*, 164 F.3d at 599-600 (finding that the "detailed scope determination procedures that Commerce has provided constitute precisely the kind of administrative remedy that must be exhausted before a party may litigate the validity of the administrative action").

### 1. SBA Regulations Require Exhaustion

SBA's regulations provide that "[t]he OHA appeal is an administrative remedy that *must* be exhausted before judicial review of a NAICS code designation may be sought in a court."  13 C.F.R. § 121.1102 (emphasis added).  Consistent with this mandatory language, the Court of Federal Claims has recognized that a challenge to an agency's assignment of a particular NAICS code "is an administrative remedy which must be exhausted before judicial review of a code designation is permitted." *Rotech Healthcare, Inc. v. United States*, 71 Fed. Cl. 393, 407 (2006).  Accordingly, if no party had appealed the contracting officer's NAICS code selection to OHA, it would not have been reviewable in court.

Here, Information Ventures timely appealed the contracting officer's NAICS code determination for the solicitation and OHA issued a final decision.  It is undisputed that interested persons, including Palladian, received notice of the pending NAICS code appeal, and had an opportunity to intervene and participate in that proceeding.  *See* 13 C.F.R. § 134.210(b) ("Any interested person may move to intervene at any time . . . .").  Palladian did not do so.

By regulation, when OHA issued its NAICS code determination for the solicitation, it became a final decision. 13 C.F.R. § 134.316(d) ("The decision is the final decision of the SBA and becomes effective upon issuance.").  The code selected governs later proceedings concerning the same solicitation and is not subject to reconsideration. *See* 13 C.F.R. § 134.316(f) ("The decision in a NAICS code

appeal may not be reconsidered."); *see also Integrated Lab. Sys., Inc.*, SBA No. NAICS-4733, 2005 WL 5714171, at \*3 n.4 (Oct. 6, 2005) (noting that OHA precedent "holds that a decision which determines the correct code for a solicitation controls in the case of later-filed appeals concerning the same solicitation"). According to OHA, "[t]o hold otherwise would permit constant re-litigation of a solicitation's NAICS code, as successive potential offerors expressed their unhappiness with the codes determined by this Office's decisions." *Advanced Sys.*, 69 Fed. Cl. at 480-81.

Consistent with these regulations, in Palladian's subsequent appeal of the same issue, OHA refused to depart from or reconsider its NAICS code decision in *Information Ventures*. OHA explained that, if Palladian "wished to litigate the issue of what NAICS code should apply to this RFP," then it should have intervened in the pending appeal. *Palladian OHA Dismissal*, 2014 WL 1924608, at \*6. In Palladian's bid protest, however, the Court of Federal Claims rejected the government's argument that Palladian was required to participate in the pending OHA appeal. Specifically, the court found it would be burdensome to require potential small business offerors to intervene in every SBA NAICS code challenge to the solicitation to preserve the possibility of judicial review. The court noted that, in many instances, intervention would require litigants to file "useless motions in order to preserve their rights." *Palladian*, 119 Fed. Cl. at 437.[3]

---

[3] The futility exception to the exhaustion requirement applies "in situations in which enforcing the exhaustion requirement would mean that parties 'would be required to go through obviously useless motions in order to preserve their rights.'" *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (quoting *Bendure v. United States*, 554 F.2d 427, 431 (Ct. Cl.

The court was also concerned that small businesses would "be forced to expend significant time and money to involve themselves in potentially costly litigation, in some cases, even before having made the decision of whether or not to submit a proposal." *Id.*

On appeal, the government maintains that Palladian was "required to either address the merits in the pending OHA NAICS proceeding or accept OHA's ruling on the appropriate code as dispositive." Appellant Br. 21. According to the government, the court "undermined the administrative scheme established by SBA and erroneously excused Palladian from exhausting administrative remedies and thereby deprived OHA of a principal purpose of administrative exhaustion, *i.e.*, 'an opportunity to correct its own [potential] errors.'" *Id.* at 34 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)). The government argues that it "reasonably interprets OHA regulations as requiring that an interested party participate in the solicitation's OHA NAICS code appeal, or be barred from suit." Appellant Reply Br. 4.

In response, Palladian concedes that a "party adversely affected by a NAICS code determination must first file at OHA within 10 days of that determination." Appellee

---

1977)). We apply the exception narrowly, however. "The mere fact that an adverse decision may have been likely does not excuse a party from a statutory or regulatory requirement that it exhaust administrative remedies." *Id.* As the government notes, Palladian does not attempt to defend the Court of Federal Claims' suggestion that exhaustion was not required because it would be "useless" or "futile." Palladian's suggestion of a different alternative to the original code designation than NAICS code 541611 could have been made to OHA in the context of that appeal, and might well have been deemed persuasive.

Br. 35. But when a contractor is "adversely affected by a NAICS code determination resulting from an OHA appeal," Palladian submits that the proper venue is the Court of Federal Claims. *Id*. at 35-36. Otherwise, as the court observed, the new code "could become completely unreviewable." *Palladian*, 119 Fed. Cl. at 437.

According to Palladian, as long as *any* interested party filed an OHA NAICS appeal and OHA rendered a final decision identifying the most appropriate NAICS code, the administrative exhaustion requirement is satisfied. In particular, Palladian argues that the regulation is written in passive voice—"The OHA appeal is an administrative remedy that must be exhausted before judicial review of a NAICS code designation may be sought in a court"—and nothing contained therein provides that "the ability to seek judicial review vests only in those parties that participated in the OHA appeal." Appellee Br. at 20-21 (quoting 13 C.F.R. § 121.1102). As explained below, on the record here, we disagree.

First, Palladian's argument that the regulations do not specify which parties must exhaust the administrative remedies lacks merit; the regulations do identify the parties that can either initiate or participate in an OHA NAICS code appeal. The regulations provide that "[a]ny person adversely affected by a NAICS code designation" may file an appeal with OHA. 13 C.F.R. § 134.302(b). When a NAICS code appeal is filed, the contracting officer must advise the public of the existence of the appeal and "the procedures and deadline for interested parties to file and serve arguments concerning the appeal." 13 C.F.R. § 121.1103(c)(1)(ii). And, once the appeal is filed, "[a]ny interested person may move to intervene at any time until the close of record by filing and serving a motion to intervene containing a statement of the moving party's interest in the case and the necessity for intervention to

protect such interest." 13 C.F.R. § 134.210(b).[4] An "interested person" is defined as "any individual, business entity, or governmental agency that has a direct stake in the outcome of the appeal." *Id.*

By regulation, "[a]ny person served with an appeal petition, any intervenor, or any person with a general interest in an issue raised by the appeal may file and serve a response supporting or opposing the appeal." 13 C.F.R. § 134.309(a). Accordingly, any interested party can present evidence and arguments for OHA to consider. The regulations make clear that OHA's decision is the final decision on the NAICS code applicable to a particular solicitation and is not subject to reconsideration by OHA. *See* 13 C.F.R. § 134.316(d); *see also* 13 C.F.R. § 134.316(f).

We agree with the government that SBA's regulations, taken together, identify the parties who must participate in a pending OHA proceeding if they want to challenge OHA's NAICS code designation in court. And, by regulation, any interested party who participated in the pending OHA appeal for the solicitation can seek judicial review of OHA's NAICS code determination. *See* 13 C.F.R. § 121.1102.

The facts of this case underline the importance of assuring that any appeal taken to OHA be all encompassing. As noted, Palladian is not urging a return to the

---

[4] Although the Court of Federal Claims found that requiring intervention would be burdensome on small businesses, there is no indication that the regulations contemplate an onerous procedure. Indeed, at oral argument, the government explained that a party can preserve its right to judicial review by filing a letter with OHA stating whether or not it supports the contracting officer's original decision. Oral Argument at 5:58-7:20.

contracting officer's original code determination; it seeks use of an altogether different code. Palladian, thus, does not contend that it failed to participate because it felt the contracting officer would represent its interests. If Palladian were correct that any code change following an OHA appeal could give rise to a court challenge by third parties, it would seem that, after a remand like that authorized by the Court of Federal Claims here, some other third party could file a protest relying on yet another code designation. The process could be endless.

Consistent with SBA regulations, in a recent decision, the Court of Federal Claims held that judicial review was not available where a protester "failed to comply with the specific procedures for challenging a NAICS code or size standard designation." *Lawrence Battelle, Inc. v. United States*, 117 Fed. Cl. 579, 588 (2014). Specifically, the court found that, because the protestor "failed to appeal the NAICS code or size standard to SBA within the time allotted, it may not seek review of the NAICS code or size determination in this proceeding." *Id.* In reaching that decision, the court recognized that it "does not have authority to ignore the process set forth in the regulations for challenging NAICS code designations." *Id.* at 588 n.11. We agree. Where, as here, Congress has specifically delegated rulemaking authority to an agency, courts "lack[] authority to undermine the regime established . . . unless [the] regulation is 'arbitrary, capricious, or manifestly contrary to the statute.'" *See Sebelius v. Auburn Reg. Med. Ctr.*, 133 S. Ct. 817, 826 (2013) (quoting *Chevron U.S.A. Inc., v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

Given these circumstances, we conclude that SBA's regulations require an interested party to participate in a pending OHA NAICS code appeal, or be precluded from filing suit. As such, Palladian's failure to participate in the pending OHA appeal was a failure to exhaust its administrative remedies.

## 2. Exhaustion is Not Excused

Palladian contends that, even if exhaustion by it is required under the regulations, the Court of Federal Claims had the authority to decline to require it in these circumstances. According to Palladian, OHA had the opportunity and obligation during *Information Ventures* to consider all potentially applicable NAICS codes before selecting the one that best describes the services required. Palladian cites the Supreme Court's decision in *McKart* for the proposition that, when "the administrative process is at an end," and the government is seeking dismissal of a case for failure to exhaust administrative remedies at the agency, "the proper inquiry for the court is whether 'judicial review may be hindered by the failure of the litigants to allow the agency to make a factual record, or to exercise or apply its expertise.'" Appellee Br. 22 (quoting *McKart*, 395 U.S. at 194). The government responds that "*McKart* does not support waiver of the requirement that Palladian exhaust the administrative remedy in Part 134." Appellant Reply Br. 10. For the reasons explained below, we agree with the government.

In *McKart*, the Court explained that "it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based." 395 U.S. at 194. Because "agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise." *Id.* *McKart* was a criminal case where the defendant was indicted for willfully and knowingly failing to report for and submit to induction into the Armed Forces. *Id.* at 186. His defense was that he should have been exempt as the "sole surviving son" whose father had been killed in action while serving in the Armed Forces. *Id.* The district court held that he could not raise that defense because he failed to exhaust the Selective Service System's administrative remedies. The court of appeals affirmed, and the Su-

preme Court reversed. Specifically, the Court held that the "petitioner's failure to appeal his classification and failure to report for his pre-induction physical do not bar a challenge to the validity of his classification as a defense to his criminal prosecution for refusal to submit to induction." *Id.* at 203.

The Court declined to apply the exhaustion doctrine to the circumstances presented in *McKart*. First, the Court explained that "use of the exhaustion doctrine in criminal cases can be exceedingly harsh. The defendant is often stripped of his only defense; he must go to jail without having any judicial review of an assertedly invalid order." *Id.* at 197. Second, the applicable "statute as it stood when petitioner was reclassified said nothing which would require registrants to raise all their claims before the appeal boards." *Id.* In fact, the "Notice of Classification form . . . inform[ed] the registrant of his right to appeal, but d[id] not inform him that failure to appeal may bar a subsequent challenge to the validity of his classification." *Id.* at 195 n.11.

In *McKart*, the Court explained that exhaustion is appropriate "where the function of the agency and the particular decision sought to be reviewed involve exercise of discretionary powers granted the agency by Congress, or require application of special expertise." *Id.* at 194. Because the question of whether the defendant was entitled to an exemption as a "sole surviving son" was one of statutory interpretation, no agency expertise or discretion was required. *Id.* at 197-98. Accordingly, the Court concluded that there was "no overwhelming need . . . to have the agency finally resolve this question in the first instance, at least not where the administrative process is at an end and the registrant is faced with criminal prosecution." *Id.* at 198.

While it is true that there are circumstances under which some types of exhaustion could be waived, the

circumstances before us do not fall into that category. *McKart* is distinguishable from this case on multiple grounds. Not only was *McKart* a criminal case, but, unlike SBA's regulations which require exhaustion, there was no statute or regulation requiring McKart to exhaust his administrative remedies before asserting wrongful classification. *See McKart*, 395 U.S. at 193 (noting that common law exhaustion "is, like most judicial doctrines, subject to numerous exceptions"). And, the issue in *McKart* was "solely one of statutory interpretation" requiring no agency expertise. *Id.* at 198. In contrast, a NAICS code decision requires that SBA-OHA exercise its expertise. *See Baird Corp. v. United States*, 1 Cl. Ct. 662, 666 (1983) (SBA's determination "is entitled to considerable weight since it 'incorporates quasi-technical . . . intricacies inherent in a comprehensive regulatory scheme.'"). These many factual differences render Palladian's reliance on *McKart* unpersuasive.

Indeed, the Supreme Court emphasized the importance of certain of these factual distinctions in *McGee v. United States*, 402 U.S. 479 (1971). There, the defendant was convicted of failing to submit to induction and his defense was that he was classified incorrectly by the local Selective Service board. *Id.* at 480. Although McGee contended that he was exempt from the draft as a ministerial student, he never requested classification as a ministerial student and refused to respond to questionnaires about his educational plans. *Id.* at 481. The Court explained that, "[u]nlike the dispute about statutory interpretation involved in *McKart*, McGee's claims to exempt status—as a ministerial student or a conscientious objector—depended on the application of expertise by administrative bodies in resolving underlying issues of fact." *Id.* at 486. Because McGee's defenses were fact-based, his failure to file an administrative appeal deprived the appeal board of the opportunity to apply its expertise in factfinding. *Id.* at 490-91. The Court con-

cluded that McGee's "failure to exhaust administrative remedies bars the defense of erroneous classification," and it refused to excuse exhaustion, despite the criminal context in which the issue arose. *Id.* at 491.

As noted, NAICS code selection is a fact-specific determination that requires agency expertise. Accordingly, *McGee's* emphasis on presenting fact-based issues to the agency supports the government's position that interested parties must exhaust their administrative remedies with SBA-OHA prior to seeking judicial review.

Finally, Palladian argues that a purported failure to exhaust administrative remedies should not result in dismissal where it is clear that the agency considered the issues raised in the plaintiff's suit. In support of this proposition, Palladian relies on two decisions from our sister circuits involving common law exhaustion: *Natural Resources Defense Council, Inc. v. U.S. Environmental Protection Agency*, 824 F.2d 1146, 1151 (D.C. Cir. 1987) (en banc) ("*NRDC*"), and *American Forest & Paper Association v. United States Environmental Protection Agency*, 137 F.3d 291, 295-96 (5th Cir. 1998). Both cases involved review of a final agency rule where the plaintiff failed to participate during the notice and comment period, and neither case is particularly helpful for Palladian.

In *NRDC*, the D.C. Circuit indicated that it generally requires participation in rulemaking proceedings during the comment period "as a prerequisite to a petition for direct review of the resulting regulations." *NRDC*, 824 F.2d at 1150. It explained, however, that courts have waived exhaustion where the agency "'has had an opportunity to consider the identical issues [presented to the court] . . . but which were raised by other parties,'" or if the agency's decision indicates that it "had 'the opportunity to consider' 'the very argument pressed' by the petitioner on judicial review." *Id.* at 1151 (internal citations omitted). Because there was evidence that the agency

"actually did consider the issue raised by the NRDC in its petition for review," the court excused the exhaustion requirement. *Id.*

Likewise, in *American Forest & Paper Association*, the Fifth Circuit indicated that it had "never held that failure to raise an objection during the public notice and comment period estops a petitioner from raising it on appeal." 137 F.3d at 295. The court further noted that the concerns underlying the exhaustion doctrine were not implicated because the public comments from other interested parties were "sufficiently specific" such that "the agency cannot reasonably claim that it has been denied the opportunity to consider the issue." *Id.* at 295-96.

Palladian's reliance on these cases is misplaced. Neither case involved a statutory or regulatory exhaustion requirement, both cases were discussing rules that affected all matters and all parties appearing before the respective agencies, and both cases involved issues of statutory interpretation rather than fact-specific inquiries. *See NRDC*, 824 F.2d at 1151 (the NRDC argued that the EPA "in fact considered the statutory issue raised in the petition"); *Am. Forest & Paper Assoc.*, 137 F.3d at 295 ("During the public comment period, EPA was presented with detailed objections concerning the scope of endangered species protection under Louisiana's proposed program."). There is, moreover, no evidence that Palladian's now-urged code designation was discussed during Information Ventures' OHA appeal.

Applying the exhaustion doctrine here "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy*, 503 U.S. at 145. As outlined above, SBA-OHA "is vested with exclusive jurisdiction to review the [contracting officer's] determination of the appropriate NAICS code designation." *Ceres Envt'l Servs. v. United States*, 52 Fed. Cl. 23, 33 (2002) (citing 13 C.F.R. § 121.1102). Although Palladi-

an contends that the issue it presented in court was the same as that presented in the Information Ventures' OHA appeal, Palladian raised additional evidence and arguments in its protest that the contracting officer did not present to OHA. Specifically, Palladian argued in its bid protest that NAICS code 519130, "Internet Publishing and Broadcasting and Web Search Portals"—and not the code suggested by the contracting officer—best described the principal purpose of the solicitation. Palladian's failure to present this argument in the pending OHA appeal deprived the agency of "an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger*, 422 U.S. at 765.

Palladian had notice of Information Ventures' appeal and knew, or should have known, that the appeal could result in a final decision changing the code and rendering Palladian ineligible to compete. Palladian's mere belief that it was not required to participate in the OHA proceeding does not excuse its obligation to do so. As noted previously, we agree with OHA that, to hold otherwise "would potentially create endless cycles of NAICS code litigation, whereby any concern disappointed by an OHA decision could file a new NAICS code appeal, and thereby re-litigate the matter." *Palladian OHA Dismissal*, 2014 WL 1924608, at *6.

We have considered Palladian's remaining arguments with respect to exhaustion and conclude that they are without merit. Palladian's failure to participate in the pending OHA appeal was a failure to exhaust its administrative remedies and we decline Palladian's invitation to read an exception into or otherwise excuse the SBA's regulatory exhaustion requirement. Because Palladian failed to exhaust its administrative remedies, dismissal is required. *See Deseado Int'l, Ltd. v. United States*, 600 F.3d 1377, 1380 (Fed. Cir. 2010) (affirming dismissal of a

litigant's suit for failure to participate in a pending administrative proceeding which could affect its interests).

CONCLUSION

We conclude that the Court of Federal Claims had jurisdiction pursuant to 28 U.S.C. § 1491(b)(1) over both OHA's NAICS code decision and the contracting officer's amendment to the solicitation reflecting that decision. But because Palladian was required by regulation to participate in the pending OHA proceeding challenging the applicable NAICS code for the solicitation and failed to do so, we reverse the Court of Federal Claims' decision and permanent injunction, and remand with instructions to dismiss Palladian's protest for failure to exhaust its administrative remedies.

**REVERSED**